[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried in Boston, Massachusetts on October 4, 1980. They have resided continuously in Connecticut since 1987, and therefore, the court has jurisdiction. They have two children, issue of the marriage. They are Francesca, born June 10, 1988 and Gianna, born January 20, 1992. The evidence indicates that the marriage has irretrievably broken down, and judgment may enter dissolving the marriage on that ground.
The plaintiff, age 48, enjoys good health. He obtained his Bachelor of Music Education in 1973 from the Boston Conservatory of Music and has a Master's of Music Performance and a Master in Voice from the New England Conservatory of Music in 1976.
The defendant, age 47, also is in excellent health. She earned a Bachelor of Arts Degree in 1974 from Emmanuel College majoring in Psychology and English. She has worked in the advertising and marketing fields during the marriage and currently operates her own business.
This is the story of an opera singer wannabe who has spent most of his adult life pursuing that dream. He married a woman who shared that goal, and who attempted to assist the plaintiff in every way she could. She became the principal wage earner in the family, permitting the plaintiff to take voice lessons over an eleven year period during the marriage. She relocated with him on several occasions to accommodate his opportunities and she furnished him with encouragement and moral support. CT Page 10026
It was not until approximately 1993 at the age of 43 that the plaintiff determined that a musical career was not to be for him. The marriage, which had its problems over the years, continued to falter thereafter resulting in the present action being instituted in 1996.
The plaintiff has provided a list of reasons why the marriage has broken down, and the defendant has presented her list. As in most cases, there is some merit to the complaints of each party. Both the plaintiff and defendant must bear some responsibility for the failure of their relationship.
The court has carefully considered the criteria set forth in Connecticut General Statutes Sections 46b-56, 46b-62, 46b-81,46b-82 and 46b-84 in reaching the decisions stated herein.
The following orders may enter.
 I. CUSTODY
Before the birth of their first child, the parties agreed the plaintiff would stay home and care for any children born to them. This was done because of the defendant's superior earning ability and also to accommodate the plaintiff's desire to continue his voice training. This arrangement took place after the births of both children and continues to date.
The parties separated on November 1, 1996. Thereafter, they entered various agreements as to custody. In June, 1997, they agreed to joint legal and physical custody of the children. That agreement was approved by the court on June 2, 1997 and is in effect at the resent time.
At the commencement of trial, the plaintiff requested sole legal and physical custody. Shortly before the evidence was completed, the plaintiff advised that he had changed his mind and would agree to a joint legal and physical custodial arrangement. The defendant throughout the trial has desired the existing joint custodial order to continue with some adjustments.
An attorney for the children has been appointed and has participated in the trial. An evaluation report has been completed by the Family Services Unit of the Superior Court. By stipulation, the report was admitted into evidence without requiring the presence of the counselor who prepared it. A four CT Page 10027 day trial was held with most of the emphasis on the custody issue. Both parties and the children were well represented. All counsel were most helpful in presenting relevant information to the court.
In view of the plaintiff's change of position, the court's responsibility is to determine if the joint custodial arrangement now requested by both parties is appropriate. Also, the court must define the time periods the children will spend with each parent.
The evidence clearly shows both parties are capable custodial parents. The plaintiff received glowing endorsements from the witnesses he presented. He was described as a superb "Mr. Mom," a meticulous homemaker, a loving nurturing parent. The defendant likewise received rave reviews. She was characterized as an involved, committed, capable and loving parent. The court has no reason to doubt the kudos received. After hearing from the parties, the court is satisfied they both are concerned about the welfare of their children.
The more troubling concern to the court is the ability of the parties to communicate appropriately to make a joint custodial arrangement work. Both are quick to anger, temperamental and domineering, although each denies he or she has these shortcomings. Their track record over the last two years of operating under a joint custodial arrangement has mixed reviews.
The court is going to approve their requests. The children are reported to having adjusted to the parenting styles of the parties. They are healthy, doing well and are getting their needs met. The court is reluctant to tinker with a plan that is working as far as the children are concerned. Also, it is significant that both their attorney and the family relations counselor recommended joint custody.
The court orders that the parties shall joint legal and physical custody of their two minor daughters. The court intends the parties to share the responsibilities of raising their children and both participating in a meaningful way in the children's lives.
Both parties and the attorney for the children have requested detailed orders concerning the times spent by the children with CT Page 10028 each parent. They also seek specific instructions to the parties concerning implementation of the schedule, including orders to cover all foreseeable situations that may arise in the future.
This indeed is a daunting task. The specificity of the proposed plans indicate a lack of confidence in the parties' ability to communicate and agree. Reluctantly, the court will oblige them and dictate, with the threat of contempt, how the parties shall run their lives when dealing with their children over the next several years. How much easier life would be for all involved if they could agree on decisions, keeping their children's welfare in mind, and compromising when necessary.
The following orders reflect the court's conclusions that:
 (1) The best way to settle disputes is to set up a tie breaker system short of returning to court;
 (2) The goal is to have each parent spend meaningful time with the children. This does not mean a need to allocate a completely equal sharing of time;
 (3) The least amount of disruption in transporting the children between the homes of the parties is desirable;
 (4) During the school year, mid week overnights are not desirable and should be kept at a minimum number.
The court is entering the orders below with the best interests of the children as its guide. It hopes the parties keep that standard in mind in their future dealings with each other.
It is ordered:
(1) The parties shall confer to discuss and decide matters pertaining to the children's education, religious training, discipline, moral values, medical and dental care, and social, financial and traveling activities, with a view to arriving at a harmonious policy calculated to promote the best interests of the children. Communications between the parties shall be in writing unless they agree that verbal communication is productive. In the event that the parties are unable to reach a mutual decision regarding any of the foregoing issues after discussion, then they shall jointly submit the issue to the children's therapist, Dr. Marc CT Page 10029 Gershowitz. If the parties remain unable to agree after meeting with Dr. Gershowitz, the issue shall be submitted to the court. Neither party shall act unilaterally; the status quo shall remain in effect until agreement is reached or a judgment is issued by the court, except in the case of medical emergency. The parties shall equally share Dr. Gershowitz's fees if his services are invoked by either to resolve an impasse.
(2) Neither party shall remove the residence of the minor children from the town of Ridgefield without 90 days advance notice of the date of departure and notification of the proposed new residence address to the other.
(3) Neither party shall schedule activities for the children during time the children are scheduled to be with the other parent without the advance agreement of the other parent. Both parents may attend sporting events, school activities, scout meetings in which the children are involved notwithstanding the visitation schedule. Both parents may volunteer to assist with the children's activities as coach, scout leader, room mother/father, or chaperon.
(4) If either parent plans to hire a babysitter for more than three hours (other than a regular day care provider), the other parent shall have a right of first refusal to care for the children.
(5) Each parent may call the children at the other parent's home once a day between the hours of 6 p. m. to 8 p. m. Both parents shall permit and encourage the children to telephone the other parent at will, and assist the children in calling the other parent if necessary.
(6) The parent shall establish a calendar for the coming year during the first week of January each year showing the access schedule with the exception of each parent's uninterrupted summer vacation. The three week rotation, hereinafter ordered, shall be continuous and shall begin with the first weekend after the resumption of school and conclude with the last full weekend in June prior to school closing for the year. Holidays and school breaks shall preempt the regular schedule but shall not require a deviation from it. Each parent, however, shall be sensitive to the length of the children's separation from the other parent in the event that CT Page 10030 a longer than usual period between contacts follows from the schedule.
(7) Each parent shall have reasonable, liberal and flexible access to the minor children. The parties shall consider the children's request to access to the other parent as articulated by the children. The defendant mother's access shall include:
a. During the school year
 1. The first two weekends of every three week rotation, extending from 5 p. m. on Friday until the return to school on Monday, except for weekends with a federal Monday holiday, in which case visitation shall extend until the return to school on Tuesday. The defendant mother shall pick up the children from the plaintiff father's home.
 2. Each Wednesday afternoon prior to the mother's weekend from the end of the children's school day until 8 p. m., the defendant mother shall pick up the children directly from school and the plaintiff father shall pick up the children from the mother's home. The children shall complete their homework and eat dinner while with the mother. During those weeks where there is no school, the mother may pick up the children at 2 p. m. until 8 p. m.
 3. Each Wednesday prior to the father's weekend from the end of the children's school day until the return to school on Thursday morning. The defendant mother shall pick up the children from school and deliver them back to school.
 4. Should the plaintiff father be unavailable after school dismissal on weekdays (either in school or at work), and should the defendant mother be available in her home, the children shall return to the defendant mother's home from school until picked up by the plaintiff father.
 5. The defendant mother shall not retain homework assignments or school or activity notices carried to her home by the children but may keep copies. If CT Page 10031 either child shall verbally relay homework assignments or school messages to the defendant mother, she shall communicate them, in writing, to the plaintiff father.
b. During the summer
 1. The first portion of the children's summer vacations, beginning at 9 a.m. on the second full day following the last day of school, and continuing until 9 a.m. on the first day of August. During that period, the defendant mother shall be entitled to take two uninterrupted weeks vacation with the children, which weeks may be consecutive. The defendant mother shall give written notice of the two weeks she elects by May 1. The children shall visit with the father from 5 p. m. on Friday until 7:30 p. m. on Sunday each weekend that is not included in the mother's vacation.
 8. The plaintiff father's reasonable, liberal and flexible access to the minor children shall include:
 a. During the school year
1. The third weekend of every three week rotation.
 2. Time not otherwise specifically assigned to the defendant mother, above.
 b. During the summer
1. The latter portion of the children's summer school vacations, beginning at 9 a.m. on the first day of August and continuing until the children's return to school. During that period, the plaintiff father shall be entitled to take two uninterrupted weeks vacation with the children, which weeks may be consecutive. The plaintiff father shall give written notice of the two weeks he elects by May 15. The children shall visit the defendant mother from 5 p. m. on Friday until 7:30 p. m. on Sunday each weekend that is not included in the father's vacation. CT Page 10032
 9. Holiday visitation shall preempt regular and vacation visitation. Unless otherwise specified, holiday visitation shall extend from 8 a.m. until 7:30 p. m.
 10. The defendant mother's holiday visitation shall include:
a. even-numbered years
 1. Easter weekend from one hour after dismissal from the last day of school through 7:30 p. m. on Easter Sunday.
 2. The school spring vacation, provided that if there is more than one spring vacation, the longer one shall be spent with the mother and the shorter with the father.
 3. The Fourth of July.
 4. Columbus Day weekend from 5 p. m. on Friday until 7:30 p. m. on Monday.
 5. Thanksgiving from one hour after dismissal from the last day of school prior to Thanksgiving through 7:30 p. m. on Sunday.
 6. From one hour after dismissal from me last day of school prior to Christmas through December 25th at noon. The defendant mother shall pick up the children from the father's home and the plaintiff father shall pick up the children from the mother's home on Christmas Day.
 7. With Gianna on Gianna's birthday from 3:30 p. m. until 7:30 p. m.
 b. Odd-numbered years (for defendant mother)
1. The Fourth of July.
 2. Columbus Day weekend from 5 p. m. on Friday until 7:30 p. m. on Monday.
 3. Halloween from school dismissal until 8 p. m. If the children will not be returning to the CT Page 10033 father's home in costume, the defendant mother shall arrange for the children, in costume, to stop briefly at the father's residence. The defendant mother shall pick up the children from school and the plaintiff father shall later pick up the children from the mother's home.
 4. From noon on December 25th until 7:30 p. m. on the day preceding the resumption of school. The defendant mother shall pick up the children from the father's home and the plaintiff father shall later pick up the children from the mother's home.
 5. With Francesca on Francesca's birthday from 3:30 p. m. until 7:30 p. m.
 11. The plaintiff father's holiday visitation shall include:
a. Even-numbered years
1. Memorial Day weekend.
2. Labor Day weekend.
 3. Halloween, from school dismissal until 8 p. m. If the children are spending the night with the mother, the plaintiff father shall pick up the children from school and the defendant mother shall pick up the children from the father's home. If the children are not spending the night with the mother, the plaintiff father shall arrange for the children, in costume, to stop briefly, at the mother's residence.
 4. From noon on December 25th until the resumption of school. The plaintiff father shall pick up the children from the mother's home.
 5. With Francesca on Francesca's birthday from 3:30 p. m. until 7:30 p. m.
 b. Odd-numbered years
1. Easter weekend from dismissal on the last day of school prior to Easter through the resumption of CT Page 10034 school.
 2. The school Spring vacation, provided that if there is more than one Spring vacation, the longer one shall be spent with the father and the shorter with the mother.
 3. Memorial Day weekend
4. Labor Day weekend.
 5. Thanksgiving from the end of mother's visitation on Wednesday evening or Thursday morning until the resumption of school.
 6. From dismissal on the last day of school prior to Christmas through December 25th at noon. The defendant mother shall pick up the children from the plaintiff father's home. With Gianna on Gianna's birthday from 3:30 p. m. until 7:30 p. m.
 12. The defendant shall accompany the children to routine doctor's appointments, which shall be scheduled in consultation with the plaintiff father. The plaintiff father shall schedule and accompany the children to routine dentist's appointments. Neither party shall be entitled to attend routine appointment scheduled by the other.
 13. Each parent shall promptly notify the other if either has any knowledge of any illness or accident seriously affecting the health or welfare of the children (defined as requiring the services of a physician).
 14. Each parent will keep the other informed of the whereabouts, including a telephone number, of the minor children, if the children will not be sleeping in the residence of the parent for two or more nights. Either parent may take the children out of state overnight on holidays or for vacations or visitation, so long as notice of the address and telephone number of the destination is provided to the other parent in advance of the departure.
 15. Each parent shall employ either an answering machine, CT Page 10035 beeper or answering service at all times and shall respond to inquiries and messages left by the other parent promptly. The minor children are not to be used to convey messages, verbal or written, between the parents.
 16. Neither parent shall do or say anything to or in the presence of the children which would tend to detract from the ordinary love and affection of the children for the other parent.
 17. Both parents shall have the right to access to all academic, medical, hospital or other health records of the children.
 18. Each parent shall keep the other informed of the children's school, sports and extracurricular activities and provide the other parent with notice of special events to which parents and/or the public are invited, and shall provide the other parent with "parent tickets" if distributed or made available for the special event.
 19. Each parent is expected to adapt to the changing needs and interests of the children, and to arrange his or her schedule to accommodate the children's birthday party invitations, play dates, sports and social schedules, remembering that such activities are an ordinary part of the children's development and that the children will enjoy activities and benefit from them.
 20. Each parent shall ensure that all of the children's clothing, toys and equipment are returned with the children to the parent who purchased the items so that the children may use and enjoy them while with that parent.
Both parents are cautioned that the animosity between them is detrimental to the children, and that engaging in ongoing individual counseling would be of assistance to each of them in resolving disagreements which may arise in the future. The parties have an opportunity to prove their stated concerns for the welfare of their children by making the joint custodial arrangement work. The reward will be having two happy and adjusted offsprings.
 II. FINANCIAL ORDERS
CT Page 10036
1. Periodic Alimony
As previously stated, early in the marriage the parties agreed that the plaintiff husband would stay home with the children, and the defendant wife would be the wage earner for the family. They maintained that arrangement throughout their marriage.
Both parties have college degrees. The plaintiff continued receiving voice training for a considerable period of time while tending to his parental duties. The defendant has been gainfully employed and has enjoyed some profitable years in pursuing her career in marketing and advertising. She has earned enough to meet family needs including financing the plaintiff's pursuit of a career in opera.
The plaintiff at various times worked as a real estate agent, real estate manager, and substitute teacher. He has rejected an offer to teach full time at a salary of $40,000 per year. He currently works as an administrative assistant to a financial planner and earns $31,000 per year. He also operates a home inspection business which presently returns minimal profits.
The plaintiff has testified that his future plans include attending law school. He has been accepted at Pace University and would like to enroll in the fall semester starting next month. He would like to retire from his employment and requests an alimony award in a sufficient amount to permit him to follow this plan.
The disparity in the incomes of the parties indicates an alimony award to the plaintiff is warranted. However, whether the defendant should be compelled to finance the plaintiff's current ambition is debatable.
Under the facts of this case and a consideration of the criteria of Section 46b-82, the court concludes that the plaintiff is not entitled to rehabilitative alimony to finance his law school education.
The plaintiff is a bright, skilled and capable gentleman. This is not a spouse who gave up an opportunity to work in order to stay home and raise a family. The plaintiff took voice lessons for 11 years during the marriage, financed by his spouse's earnings. Over the years he was able to learn the real estate management CT Page 10037 business, assist his wife in the operation of her business, teach school, operate a home inspection business, and he currently works with a financial planner. The court agrees with the defendant's contention that the plaintiff does not need alimony for rehabilitative purposes.
The court finds that the defendant's current annual gross income is $90,300. This consists of the $78,300 listed on her financial affidavit, dated July 13, 1999; an additional $8,000 reported as a corporate loan; and $4,000 for personal automobile expenses paid through her business. The plaintiff's current financial affidavit (July 13, 1999) indicates an annual gross income of $31,300. The plaintiff testified he could earn at his present job $39,500 per year if he worked full time. There is no impediment to the plaintiff's working a full schedule, because the defendant, who resides around the corner from the plaintiff, is willing and available to look after their children after school, if necessary. The alimony award is based on the plaintiff's ability to earn $39,500 annually.
It is ordered:
1. The defendant shall pay to the plaintiff as periodic alimony the sum of $867 per month. The payments shall commence on August 1, 1999 and the first day of each month thereafter, in advance, one-half on the first and fifteenth of each month and continue until the death of either party, the plaintiff's remarriage or July 31, 2004, whichever event first occurs.
2. Commencing August 1, 2004, if the parties are living and the plaintiff has not remarried, the defendant shall pay to the plaintiff as periodic alimony the sum of $1 per year, until the death of either party, the plaintiff's remarriage or July 31, 2009, whichever event first occurs.
3. The defendant's obligation to pay periodic alimony to the plaintiff over a ten year period shall be non-modifiable as to term.
4. A contingent wage withholding order may enter.
5. The plaintiffs hall pay to the defendant as periodic alimony the sum of $1 per year until the death of either party, the defendant's remarriage or July 31, 2009, whichever event first occurs. This award shall be non-modifiable as to term. CT Page 10038
(2) Child Support
 The parties agreed that the child support guidelines effective August 1, 1999 would be applied in this case.
Applying the guidelines to the defendant's current salary of $90,300 per year and the plaintiffs current salary of $31,300 per year, the defendant's support obligation is $360 per week.
The parties have a shared physical custody arrangement. As a result ordering the defendant to pay an amount of child support in accordance with the guidelines would be inequitable. A deviation from the guidelines is appropriate. The defendant has physical custody of the children a substantial amount of time resulting in an increase in her expenses for the children. After deviation, the plaintiff is left with sufficient funds to meet the basic needs of the children.
1. It is ordered that the defendant pay to the plaintiff as child support the sum of $867 per month. The payments shall commence on August 1, 1999 and on the first day of each month thereafter, in advance, one-half on the first and fifteenth of each month and continue until each child attains the age of 18 years, but if still in high school and residing with the plaintiff, support shall continue through high school graduation, but not beyond the age of 19 years.
2. A contingent wage withholding order may enter.
3. For income tax purposes, the plaintiff may claim the minor child, Francesca, as a dependency exemption, and the defendant may claim the child, Gianna, as a dependency exemption.
3. Medical Expenses
 It is ordered:
 1. The defendant shall maintain at her cost, medical and dental insurance coverage for the minor children. The parties shall equally share the payment of reasonable unreimbursed medical and dental expenses incurred by the children. Neither party shall contract for extraordinary expenses without consulting with the other, except in the case of emergencies. All psychological or psychiatric care and/or therapy for the children CT Page 10039 shall be agreed upon in advance.
2. Section 46b-84(e) of the Connecticut General Statutes shall apply.
(4) Life Insurance
 Both parties shall maintain their current life insurance policies as shown on their respective financial affidavits, and each shall name the children as the equal beneficiaries of the same, said designation to continue until each child graduates from high school, but not beyond the age of 19 years.
(5) Custodial Accounts for Children
 The parties shall be joint custodians of all accounts designated for the children, including accounts with Vanguard and Merrill Lynch of which the plaintiff is currently custodian and the children's savings bonds also in the possession of the plaintiff. Said funds shall be designated for the education of the children, and the parents shall mutually decide the disposition of the funds.
6. Furniture and Furnishings.
 When the parties separated, they allocated their furnishings and personal possessions. The defendant's current request for the return of various items is denied with the following exceptions:
 1. The plaintiff shall return to the defendant, if in his possession, the defendant's books and photo albums from prior to the marriage; the defendant's antique apothecary jars and cookware.
 2. The plaintiff shall make available to the defendant all home videos and photographs. The defendant shall be allowed to make copies of them, at her expense.
(7) Other Assets.
 It is ordered:
 1. The plaintiff is awarded the following assets: CT Page 10040
a. The opera collection;
b. The 1993 Jeep Cherokee automobile;
c. His bank accounts;
d. His IRA with Merrill Lynch;
e. His rental security deposit;
f. His interest in the business; Pillar to Post.
2. The defendant is awarded the following assets:
a. The pottery collection;
b. Her bank accounts;
 c. Her entire interest in the business, Anagram Partners, Inc.;
 d. Her retirement accounts — Merrill Lynch IRA and Guild Group 401 K;
 e. Her rental security deposit.
(8) Liabilities
 It is ordered:
 1. Each party shall pay the sole liabilities listed on his or her financial affidavit and indemnify and hold harmless the other from any liability thereon.
 2. The parties shall share equally as responsible corporate officers any liabilities assessed by the State or Federal government with regard to Marketworks, Inc.
 3. In accordance with the previous agreement of the parties, they shall share equally the fees of the attorney for the children, Sharon Dornfeld. Attorney Dornfeld submitted a detailed affidavit as to her fees. The total fees through July 15, 1999 were $19,231.82. In addition, there are charges for July 16, 1999. The court finds the fee CT Page 10041 requested based on the time expended to be reasonable and the request is approved.
 The parties have paid previously the sum of $6,573.75, with the plaintiff having paid $1,000 more than the defendant. The balance due, through July 15, 1999, is $12,658.07.
 a. The plaintiff owes $5,829 and the defendant $6,829. Each shall share equally the charges for July 16, 1999.
 b. Attorney Dornfeld may request the court for a hearing on when the payments are to be made in the event an agreement cannot be reached as to a payment schedule.
(9) Defendant's Motion to Modify Alimony Pendente Lite.
Defendant's motion was served upon the plaintiff on August 26, 1998. The parties stipulated that a favorable result would be retroactive to October 5, 1998, with the defendant able to request retroactivity to date of service as provided by statute.
During the course of trial, evidence was presented on this motion. The parties' situations as they existed in October, 1998 were compared with February 6, 1998, the date the pendente lite awards were issued. The defendant's motion was based on her claim of a substantial reduction in her income since the orders were entered, and she sought relief as to the alimony award of $400 per week, only.
The court finds that the defendant has sustained her burden of proof in that the defendant's net income substantially decreased between the February, 1998 order and the time the motion to modify was served. It was $5,900 net per month at the pendente lite hearing and $3,900 net per month on September 3, 1998. The motion to modify alimony, pendente lite is granted.
It is ordered:
 (1) As of October 5, 1998, the alimony pendente lite order is reduced to $250 per week (from $400). October 5, 1998 through July 31, 1999 is a period of 43 weeks. Applying a reduction of $150 per week, leaves a total of $6,450. From this amount the arrearage of $1,500, which the court finds the defendant owes on the existing pendente lite order, must be deducted. This results in a balance of CT Page 10042 $4,950 which is the amount due back to the defendant.
 (2) The plaintiff shall repay the sum of $4,950 to the defendant at the rate of $25 per week until such time as paid in full. The payments shall commence on January 2, 2000 and weekly thereafter.
Judgment may enter accordingly.
NOVACK, J.